**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARL MCALLISTER,<br><br>*Plaintiff,*<br><br>v.<br><br>THE WALTON LAW GROUP, LLC, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-9 (SLS)<br>Judge Sparkle L. Sooknanan |

<u>**MEMORANDUM OPINION**</u>

In January 2023, Carl McAllister hired Charles Walton and The Walton Law Group, LLC to bring discrimination claims against his employer. He alleges that they counseled him to file multiple charges with the Equal Employment Opportunity Commission (EEOC) and promised to file a lawsuit on his behalf. But Mr. Walton and his firm never did. Now many of Mr. McAllister's claims are time-barred by statute. In December 2025, Mr. McAllister, proceeding pro se, sued Mr. Walton and his firm in D.C. Superior Court alleging legal malpractice, breach of contract, fraud, and negligent misrepresentation. The Defendants removed the lawsuit to this Court on the basis of diversity jurisdiction and now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies the Defendants' motion.

**BACKGROUND**

**A.      Factual Background**

The Court draws the facts, accepted as true, from Mr. McAllister's Complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). Because Mr. McAllister is proceeding pro se, the Court considers his Complaint "in light of all filings," including his

opposition to the Defendants' motion to dismiss. *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (quotation omitted).

Mr. McAllister, who is African American, has worked for the District of Columbia Department of Human Services (DC DHS) as a Case Manager in the Family Services Administration, Homeless Division since approximately 2011 or 2012. Compl. ¶¶ 7–8, ECF No. 1-2. He claims to have experienced continuous racial discrimination, retaliation, and harassment throughout his employment at DC DHS. *Id*. ¶¶ 8, 11, 60; Opp'n 7–8,[1] ECF No. 8. And he has filed several discrimination charges with the EEOC. Compl. ¶¶ 13, 15, 22, 28, 60; Opp'n 5–8. As a result of one of his charges, he received a right-to-sue letter from the EEOC in September 2022 "with a filing deadline of approximately December 25, 2022." Compl. ¶ 13.

On January 3, 2023, Mr. McAllister retained the Defendants "to pursue legal remedies for the employment discrimination he suffered at DC DHS." Compl. ¶ 12. He paid the Defendants $3,800 and signed a written retainer agreement. Compl. ¶¶ 18, 47. While the written agreement stated only that the firm would provide "document review" services, Mr. McAllister signed the agreement and paid the firm based on Mr. Walton "verbally agree[ing] and promis[ing] to file lawsuits against DC DHS for discriminatory conduct." Compl. ¶¶ 17–19, 64, 66–68, Opp'n 11. Mr. Walton also promised to "remedy the missed December 2022 deadline" from Mr. McAllister's right-to-sue letter. Compl. ¶¶ 14, 17.

During his "initial consultations" with the Defendants, Mr. McAllister detailed the decade of discriminatory conduct that he experienced at DC DHS and stated that he wanted to "pursue all available legal remedies." Compl. ¶ 15. Mr. Walton "coached" him to file a second discrimination

---

[1] Where Mr. McAllister's filings are not paginated, the Court cites the page numbers assigned by the Court's Electronic Case Filing (ECF) system.

charge with the EEOC "to obtain a new Right to Sue letter." Compl. ¶ 21. This new charge was "based on continuing discrimination that occurred after [Mr. McAllister] retained [the] Defendants," Opp'n 7–8, and Mr. Walton represented that the charge could "remedy the missed December 2022 deadline" from the first letter, Compl. ¶ 21.

Mr. McAllister received a second right-to-sue letter from the EEOC in February or March 2024, with a filing deadline in May or June 2024. Compl. ¶¶ 23–24. The Defendants, however, did not file a lawsuit on Mr. McAllister's behalf before that deadline. Compl. ¶ 25. When Mr. McAllister asked why, the Defendants "blamed" him, saying that his "case file was not formatted properly." Compl. ¶ 26. Mr. Walton then "persuaded" Mr. McAllister to file a third EEOC charge, representing that the new charge "would provide another opportunity to file properly." Compl. ¶ 27; *see also* Opp'n 7–8.

Mr. McAllister received a third right-to-sue letter from the EEOC in August 2024, with a filing deadline of November 10, 2024. Compl. ¶¶ 29, 31. In the weeks before the deadline, Mr. Walton told Mr. McAllister that he was "taking an international vacation," but he assured Mr. McAllister that he would file the lawsuit and "fix everything" upon his return. Compl. ¶¶ 29–30. He also introduced Mr. McAllister to Miranda Taylor, who he said was an "Employment Attorney Specialist" who would "assist" with Mr. McAllister's case. Compl. ¶¶ 33–35.[2] Relying on Mr. Walton's assurances, Mr. McAllister "trusted" that Mr. Walton "would file the lawsuit" before the November deadline. Compl. ¶ 31. But the deadline came and went, and Mr. Walton did not file the promised lawsuit. Compl. ¶ 32.

---

[2] Mr. McAllister alleges that he has since searched publicly available attorney databases for the D.C., Virginia, and Maryland bar associations and has found no record that Miranda Taylor is a licensed attorney. Compl. ¶ 37, ECF No. 1-2.

3

After the missed deadline, Mr. Walton claimed that he had reached out to Mr. McAllister multiple times about filing the lawsuit but had received no response. Compl. ¶ 42. But Mr. McAllister had no missed calls from Mr. Walton and had "called the office multiple times requesting information about the filing." Compl. ¶ 43. Nonetheless, Mr. McAllister agreed to "sign a second retainer agreement after the deadline had passed" so that Mr. Walton could "fix" the situation he had "created through his negligence." Compl. ¶ 46. Mr. McAllister paid the Defendants an additional $1,000 under this second retainer agreement. Compl. ¶ 47. In December 2024, however, Mr. Walton and Ms. Taylor informed him that "none of his information was current" and that "there was nothing they could do to help him." Compl. ¶ 39.

**B.      Procedural Background**

On December 2, 2025, Mr. McAllister filed this lawsuit in the Superior Court of the District of Columbia alleging legal malpractice, breach of contract, fraud, and negligent misrepresentation. Compl. On January 5, 2026, the Defendants removed the case to federal court based on diversity jurisdiction. Notice of Removal, ECF No. 1. And shortly after that, the Defendants moved to dismiss Mr. McAllister's Complaint under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 2. That motion is fully briefed and ripe for review. *See* Opp'n; Reply, ECF No. 9.

<div align="center">

**LEGAL STANDARD**

</div>

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual

<div align="center">4</div>

allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A pro se complaint is to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## DISCUSSION

The Defendants seek dismissal of Mr. McAllister's claims for legal malpractice, breach of contract, fraud, and negligent misrepresentation, as well as his requests for punitive damages and prejudgment interest. The Court addresses these in turn, concluding that Mr. McAllister's claims all survive dismissal and that the challenges to his requested relief are premature.

### A.    Legal Malpractice

The Defendants first seek dismissal of Mr. McAllister's legal malpractice claim. To state a malpractice claim, Mr. McAllister must plausibly allege: (1) that he had an "attorney-client relationship" with the Defendants, (2) that they neglected or breached "a reasonable duty" that they owed him, and (3) that the breach "resulted in and was the proximate cause" of his loss or damages. *Xie v. Sklover & Co., LLC*, 260 F. Supp. 3d 30, 46 (D.D.C. 2017) (quoting *Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985)). The Defendants assert that Mr. McAllister has not sufficiently alleged proximate causation. The Court disagrees.

To satisfy the proximate causation element of a legal malpractice claim, a plaintiff must plead a "case within a case" to show that he "had a meritorious claim" that he lost due to the defendant's negligence. *United States Telesis, Inc. v. Ende*, 64 F. Supp. 3d 65, 68 (D.D.C. 2014). Here, that means that Mr. McAllister must "allege[] facts making it 'plausible'" that he had a meritorious underlying race discrimination claim under Title VII of the Civil Rights Act of 1964.

5

*See Xie*, 260 F. Supp. 3d at 47 (quoting *Iqbal*, 556 U.S. at 678); *see also* Compl. ¶ 60; Opp'n 5–9. He has carried that burden.

"The two essential elements" for a race-discrimination claim under Title VII "are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 596 (D.C. Cir. 2025) (cleaned up). Mr. McAllister alleges that he suffered numerous adverse employment actions because of his race, including that he was denied overtime and promotion opportunities. Compl. ¶¶ 8, 60; Opp'n 9. He also alleges that he has extensive documentary "evidence" to support his claims—including "written grievances, performance evaluations showing disparate treatment, disciplinary notices, emails, and internal complaints"—and "multiple witnesses" who observed his discriminatory treatment and can corroborate his claims. Compl. ¶ 60.

In a standalone Title VII case, the Court might require more specific allegations from Mr. McAllister to support his race discrimination claims. Here, however, the plausibility of his underlying claims is also supported by his allegations regarding the Defendants' conduct. During his initial consultations with Mr. Walton, Mr. McAllister "explained in detail the discrimination, harassment, and retaliation" that he had suffered. Compl. ¶ 15. And it is reasonable to infer that he also presented Mr. Walton with the evidence supporting his claims. Compl. ¶ 60. Mr. Walton, who held himself out as an "experienced employment law attorney[]," Compl. ¶ 67, then agreed to take the case and to file a lawsuit on Mr. McAllister's behalf. Compl. ¶¶ 16–17. Not only that, he encouraged Mr. McAllister to file two more EEOC charges to provide fresh opportunities to file suit. Compl. ¶¶ 21–29. This alleged conduct all supports an inference that Mr. McAllister had at least some meritorious claims that Mr. Walton believed could be advanced. *Cf. Xie*, 260

F. Supp. 3d at 47 (plaintiff alleged facts making underlying claim "plausible" where her attorneys' demand letters set forth facially plausible claims of discrimination).

In attempting to avoid this conclusion, the Defendants argue that Mr. McAllister's Title VII claims were time-barred before he retained their services. Mot. 5–6; Reply 2. That might be true of claims covered by Mr. McAllister's first right-to-sue letter, but it is not clearly true of the claims in his second and third EEOC charges—which, again, Mr. Walton allegedly prompted Mr. McAllister to file. *See* Opp'n 7–8; Compl. ¶¶ 21, 27. So that argument does not carry the day for the Defendants.

The Defendants otherwise broadly assert that Mr. McAllister's allegations about his underlying claims are too conclusory. Mot. 5; Reply 3–4. But the Defendants' arguments are much more conclusory than Mr. McAllister's allegations. Other than asserting untimeliness, the Defendants say nothing specific about why Mr. McAllister does not plausibly show that he had a "good cause of action." *Xie*, 260 F. Supp. 3d at 47 (quoting *Macktal v. Garde*, 111 F. Supp. 2d 18, 21 (D.D.C. 2000)).[3] And it is not the Court's job to fill in those gaps. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).

The viability of Mr. McAllister's underlying claims might well look "different at summary judgment, with a fuller record and a more exacting standard." *See Xie*, 260 F. Supp. 3d at 47 n.16.

---

[3] The Defendants' only other argument is that Mr. McAllister's allegation that his "three EEOC charges were premised on different discriminatory conduct . . . appears nowhere in the Complaint" and thus cannot be considered. Reply 2, ECF No. 9. But as the Court has noted, Mr. McAllister is a pro se litigant and thus his Complaint is considered in light of all his filings including his Opposition. *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019).

For now, however, his allegations about the meritorious claims that he lost because of the Defendants' negligence are sufficient to survive dismissal.

### B.    Breach of Contract

Turning to breach of contract, the Defendants' sole argument is that the claim turns on the viability of the legal malpractice claim. *See* Mot. 7. Since Mr. McAllister has plausibly alleged a malpractice claim, his breach of contract claim survives as well. *See Xie*, 260 F. Supp. 3d at 48.

### C.    Fraud & Negligent Misrepresentation

Next, the Defendants challenge Mr. McAllister's claims of fraud and negligent misrepresentation. These claims turn on whether the Defendants (1) made a false representation, (2) in reference to a material fact, (3) with knowledge of the representation's falsity, (4) with the intent to deceive, and (5) that Mr. McAllister acted in reliance on the representation. *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016) (citing *Va. Acad. of Clinical Psychs. v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005)).[4] Fraud claims must be pled with "particularity" under Federal Rule of Civil Procedure 9(b). *Id.*[5] That means that a plaintiff must plead "the who, what, when, and where of the alleged fraud," *United States ex rel. Bailey v. Veterans Med. Transcription Servs., Inc.*, No. 23-cv-7171, 2024 WL 4864480, at *1 (D.C. Cir. Nov. 22, 2024), including "what was retained or given up as a consequence," *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (cleaned up).

---

[4] At several points, Mr. McAllister's filings mention "fraudulent inducement," Opp'n 10, ECF No. 8; Compl. ¶ 19, but his Complaint does not identify "fraudulent inducement" as a standalone claim, *see* Compl. ¶¶ 54–81. In any event, "[t]he elements of fraud and fraudulent inducement are the same," *In re U.S. Off. Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 100 (D.D.C. 2003). Fraudulent inducement simply describes reliance on a fraudulent misrepresentation when entering into a contract. *See Jacobson v. Hofgard*, 168 F. Supp.3d 187, 195 n.1. (D.D.C. 2016).

[5] D.C. Courts similarly require that fraud claims be pled with particularity. *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1135 (D.C. 2012) (citing D.C. Super. Ct. R. Civ. P. 9(b)).

The elements of a negligent misrepresentation claim are the same as a fraud claim except that they do not include the "state of mind requirements." *Ternes v. C.R. Home Improvement*, No. 24-cv-1277, 2025 WL 894418, at *6 (D.D.C. Mar. 24, 2025) (cleaned up).

The Defendants argue that Mr. McAllister does not satisfy the heightened pleading standard required under Rule 9.[6] They are wrong. Mr. McAllister sufficiently alleges that the Defendants made five fraudulent and negligent misrepresentations on which he relied: (1) Mr. Walton's statement at the firm office in January 2023 that he would file lawsuits on Mr. McAllister's behalf and "handle" the lapsed Title VII deadline from December 2022; (2) Mr. Walton's representation at the firm office in November 2024 that Miranda Taylor was an "Employment Attorney Specialist," which Mr. McAllister took to mean a licensed attorney; (3) Mr. Walton's statement at the firm office in October 2024 that he would file a lawsuit when he returned from his trip before the November 2024 deadline; (4) Mr. Walton's email after the November deadline asserting that he had contacted Mr. McAllister repeatedly before the deadline and received no response; and (5) Mr. Walton and Ms. Taylor's statement at the firm office in

---

[6] There is disagreement as to whether a failure to meet Rule 9's heightened standard justifies dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6). *Contrast McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 34 (D.D.C. 2007) (suggesting a more definite statement or leave to amend is the proper recourse when a pleading "does not satisfy the heightened requirements of Rule 9(b)"), *with Stringer v. Remington Arms Co., L.L.C.*, 52 F.4th 660, 663 (5th Cir. 2022) ("[D]ismissal for failure to comply with Rule 9(b) is almost always with leave to amend." (citation omitted)), *with Ross v. City of Dallas*, No. 3:17-cv-570, 2018 WL 1569905, at *5 (N.D. Tex. 2018) ("A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim."). Furthermore, it is unclear whether claims of negligent misrepresentation are governed by Rule 9(b) as well. *Contrast Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (holding claims of negligent misrepresentation are "*not* governed by the heightened pleading standard of Rule 9(b)" (emphasis in original)), *with In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006) ("Negligent misrepresentation claims must be pleaded with particularity pursuant to Rule 9(b)."). Because Mr. McAllister's Complaint survives even if Rule 9's requirements govern this case, the Court does not weigh in on these issues.

December 2024 that Mr. McAllister's information was "not current" and thus prevented them from filing. Compl. ¶ 64; Opp'n 11–13.

These allegations sufficiently identify the who, what, when, and where of each statement. *Bailey*, 2024 WL 4864480, at *1. And Mr. McAllister has also plausibly alleged that the Defendants made these statements to deceive him into continuing to pay them legal fees and to "refrain from seeking other counsel." Compl. ¶ 66; *McMullen*, 164 F. Supp. 3d at 95; *see Va. Acad. of Clinical Psychs.*, 878 A.2d at 1234 ("A promise or contractual commitment may be actionable as fraud (misrepresentation) if at the time of its making, the promisor had no present intention of carrying it out."); *Bennett v. Kiggins*, 377 A.2d 57, 61 (D.C. 1977) ("When a person positively states that something is to be done or is to occur, when he knows the contrary to be true, the statement will support an action in fraud."). In short, these allegations put the Defendants "on notice of [the] allegedly fraudulent course of conduct" that Mr. McAllister is challenging. *Rothschild Broad., LLC v. L. Offs. of Evan D. Carb, PLLC*, No. 20-cv-2794, 2021 WL 4243411, at *9 (D.D.C. Sept. 17, 2021).

"It is possible that certain subsets" of Mr. McAllister's fraud or negligent misrepresentation allegations "do not meet the particularity standard," but the Defendants did not move to dismiss those claims "in part" or identify certain aspects that should be dismissed—they moved to dismiss the claims in their entirety. *Id.*; Mot. 8–9 (summarily asserting that all of Mr. McAllister's allegations are "insufficient," so his fraud-related "claims must be dismissed"). Because the allegations in Mr. McAllister's Complaint support his claims, the Court will not dismiss them at this early stage. *Rothschild Broad.,* 2021 WL 4243411, at *9.

**D.      Punitive Damages & Prejudgment Interest**

Finally, the Defendants seek dismissal of Mr. McAllister's request for damages and prejudgment interest. But this request is premature. While there is no uniform practice for adjudicating challenges to forms of relief sought in a complaint, *SEC v. Musk*, 826 F. Supp. 3d 35, 62–64 (D.D.C. Feb. 3, 2026), the Court finds support in Federal Rule of Civil Procedure 54(c) to "decline to address whether a complaint has adequately pleaded facts supporting entitlement to a demanded form of relief," *id*. at 66. And in any event, the Defendants' arguments are unpersuasive on the merits. "Punitive damages may be recoverable" when a plaintiff's allegations sound in fraud, *Thomas v. Nat'l Legal Pro. Assocs.*, 594 F. Supp. 2d 31, 34-35 (D.D.C. 2009), and Mr. McAllister has sufficiently pled such claims*, see also Rothschild Broad.*, 2021 WL 4243411, at *9 (declining to dismiss a plaintiff's request for punitive damages where he had sufficiently alleged that the defendants fraudulently "used their representation" of him "to benefit themselves"). He has also plausibly alleged claims for monetary damages and thus may later demonstrate entitlement to prejudgment interest. *See McKinney v. United States*, 75 F. Supp. 3d 266, 275 (D.D.C. 2014). So the Court denies this request, too.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, the Court denies the Defendants' Motion to Dismiss, ECF No. 2. A separate order will issue.

<div style="margin-left:50%">

_____
SPARKLE L. SOOKNANAN
United States District Judge

</div>

Date:    July 29, 2026

<div align="center">

11

</div>